# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| SAMUSI ADELEKAN, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 12 C 10398 |
| WILLIAM M. DEC, et al., | ) ) ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Counsel for Samusi Adelekan ("Adelekan") has followed the regrettable practice, engaged in by some lawyers, of naming everybody in sight as a codefendant in the employment discrimination action that Adelekan has brought stemming from his now-terminated employment at "The Underground Chicago," which is identified in Adelekan's Amended Complaint ("AC") ¶ 19 as a Chicago nightclub and is sometimes referred to in this opinion simply as "the Underground." After the numerous defendants had filed a motion to dismiss Adelekan's original Complaint, he sought and was granted leave to file the AC, rendering that original motion to dismiss moot. Then on March 13 defendants moved to dismiss the AC as well, filing a supporting memorandum that incorporated arguments from their initial motion to dismiss. On April 4 Adelekan filed a responsive memorandum, so that defendants' Fed. R. Civ. P. ("Rule") 12(b)(6) motion is ripe for decision.

First, however, it appears that defendants' earlier-raised issue as to the inadequacy of service on all of the defendants remains unresolved. It is unclear whether that is so, for defendants' March 13 motion and memorandum have focused on the AC and thus have not

expressly renewed those initial arguments, which appeared on their face to have persuasive force. For his part Adelekan has never spoken to that subject at all. This Court expects counsel for the parties to cast light on that issue promptly, but in the interim this opinion will address the liability issues under the AC in substantive terms.[1]

Adelekan's AC, like the original Complaint, comprises seven counts, three of them (Counts II, III and IV) being advanced under Title VII, two of them (Counts I and V) being advanced under 42 U.S.C. § 1981 ("Section 1981") and the other two (Counts VI and VII) being advanced under state law. This memorandum order will deal with those proposed grounds for relief in that order.

But first something should be said about the basic principles applicable to Rule 12(b)(6) motions. In that respect Adelekan's counsel seeks to take refuge in the proposition that even after the Twombly-Iqbal canon has imposed greater demands on plaintiffs than the old and excessively permissive Conley v. Gibson formulation, Rule 12(b)(6) calls for drawing reasonable inferences in favor of the plaintiff pleader. But even so, the requirement of reasonableness remains -- and what is "reasonable" when the allegations from which inferences are sought to be drawn are themselves reflective of sloppy pleading or worse?

Thus AC ¶ 9 carries forward the allegation of the original Complaint that codefendant Arturo Gomez ("Gomez") "at all relevant times, was the owner and president of Rockit Ranch Productions," yet AC ¶ 8 carries forward the identical allegation -- identical in every word -- as to codefendant William Dec ("Dec"). What inferences are reasonable from those self-contradictory

---

[1] That approach is constructive in more ways than one. For example, if Adelekan's counsel must go back to arrange for proper service on defendants, that would be obviated in part to the extent that the AC is held to state no claim against a particular defendant.

allegations -- except perhaps that one of them is necessarily false? But which? And in this instance it must be noted that although a couple of later allegations (AC ¶¶ 30, 31 and 36) speak of some things said and done (or not done) by Gomez, not a single further assertion in the AC speaks of anything said or done by Dec. Instead other paragraphs voice amorphous and collectivized allegations about "defendants," a collective term that tells nothing about what any defendant in the singular is alleged to have done. In part defendants have moved for the dismissal of Dec as a defendant, and that motion is accordingly granted.

Nor is that the only instance of confusion engendered by Adelekan's counsel. Here for example are parallel -- and apparently again self-contradictory -- allegations taken from AC ¶¶ 12 and 13:

> 12. Defendant ROCKIT RANCH PRODUCTIONS is a corporate entity registered in the State of Illinois and is the business name of THE UNDERGROUND CHICAGO.
>
> \* \* \*
>
> 13. Defendant NICK & HOWARD LLC is a corporate entity registered in the State of Illinois and is the business name of the entity THE UNDERGROUND CHICAGO.

And AC ¶ 12 contributes further to the puzzle by adding this allegation:

> ROCKIT RANCH PRODUCTIONS is the parent company of THE UNDERGROUND CHICAGO, Rockit Bar & Grill, Rockit Burger Bar, Sunda, and Dragon Ranch Moonshine & BBQ, all dining and/or entertainment establishments in Chicago, Illinois.

Under the operative principle of notice pleading that informs federal pleading requirements, are those allegations intended to convey the notion that "The Underground Chicago" is an entity as AC ¶ 13 states, or is it perhaps a dba for codefendant Rockit Ranch

Productions ("Rockit Ranch") or codefendant Nick & Howard LLC ("Nick & Howard") -- and if so, which? Nor is that a hypothetical question, for Adelekan's EEOC-filed Charge of Discrimination named as his employer "The Underground/Rockit Ranch Productions." And that characterization bears directly on the portion of defendants' argument that the three Title VII counts should be dismissed against Nick & Howard because it was not the target of an EEOC charge, which is the precondition to a suit under Title VII (EEOC's right-to-sue letter understandably also adverted only to "The Underground/Rockit Ranch Productions").

In Adelekan's response his counsel attempts to call to his aid the three-decades-old opinion in Eggleston v. Chicago Journeyman Plumbers' Local Union No. 130, 657 F. 2d 890, 905 (7th Cir. 1981), based on the notion that Nick & Howard "has been provided with adequate notice of the charge, under the circumstances where the party has been given the opportunity to participate in conciliation proceedings aimed at voluntary compliance" (Eggleston, id.). That is pure fiction, and Adelekan's counsel has to know it. Counsel's feeble effort to escape the consequences of not naming Nick & Howard as a party charged before the EEOC cannot carry the day, for a litigant is not entitled to disrespect corporate structuring.[2]

In sum, Nick & Howard is also dismissed as a defendant (a ruling in full accord with our Court of Appeals' most recent application of the principles just set out here in Alam v. Miller Brewing Co., 709 F. 3d 662 (7th Cir. 2013)). That does not however knock out AC Counts II, III and IV in their entirety, for those counts do target Rockit Ranch, which was named in Adelekan's Charge of Discrimination and EEOC's right-to-sue letter. Hence this opinions turns to the

---

[2] There is nothing to suggest that any alter ego or piercing-the-corporate-veil concept is appropriate here.

substantive challenges that defendants interpose to Adelekan's Title VII contentions.

Those challenges attempt to distinguish between (1) adverse employer conduct claimed to be responsive to Adelekan's reporting on and objecting to offensive race-based comments by other employees of the Underground and (2) adverse employer conduct caused by the employer's own racial bias. Any such parsing of the concept of race-based discrimination is excessively myopic. To draw on the Twombly-Iqbal requirement of "plausibility" in pleading, surely a reasonable fact finder could plausibly find that an employer's turning of a deaf ear to reports of outrageous race-based remarks directed toward African-Americans can reflect a comparable mindset on the part of the employer itself, and it involves only a short and equally plausible step to view the employer's adverse actions against an African-American whistle blower constituted prohibited race-based discrimination.

That same analysis saves Counts III and IV from dismissal by Rockit Ranch, the sole remaining target of Adelekan's Title VII contentions. In sum, then, with the motion for dismissal of Counts II, III and IV having been denied, those counts must be answered by Rockit Ranch.

Next to be considered are Counts I and V, each advanced under Section 1981. What has been said earlier, in the course of rejecting the distinction without a legal difference that defendants have advanced, applies here as well. It is unrealistic to adopt the stance urged by defendants -- that because the pervasive and ugly racist remarks about others, which went uncorrected by the employer after Adelekan reported them, did not name him directly, he could not complain when his repeated reporting of that conduct led to adverse employment decisions

that did affect him directly.[3]

That leaves for consideration Adelekan's attempt to call state law into play in Counts VI and VII. Unlike the previously-discussed situation as to Adelekan's federal claims, neither state law claim survives scrutiny.

On that score the problem is one that is peculiar to attempted tort claims that are directly linked to civil rights violations, for which the Illinois General Assembly has provided a statutory remedy under the Illinois Human Rights Act. In that respect the leading Illinois Supreme Court decision, Maksimovic v. Tsogalis, 177 Ill.2d 511, 517, 687 N.E.2d 21, 23 (1997), teaches that the tort claims are barred on preemption grounds, and that teaching has been consistently followed by later state court decisions. In this instance Adelekan seeks to base his tort claims exclusively on conduct protected by Title VII and Section 1981, so that Counts VI and VII are dismissed.

**Conclusion**

Both Dec and Nick & Howard are dismissed as defendants. As to the remaining defendants:

1. Dismissal of AC Counts II, III and IV is denied, and Rockit Ranch is ordered to answer those counts on or before April 24, 2013.

2. Dismissal of AC Counts I and V is also denied, and remaining defendants Gomez, Rockit Ranch, Dana Dedina and Ben Newby are ordered to answer those counts on or before the same date.

---

[3] It should again be emphasized that no factual findings are being made by this Court. Instead it is following the Rule 12(b)(6) approach under which Adelekan's allegations, together with reasonable inferences, must be credited arguendo.

3. AC Counts V and VI are dismissed.

_____
Milton I. Shadur
Senior United States District Judge

Date: April 10, 2013